### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 09-70088-pwb |
| | : | |
| DARLENE ELIZABETH ROSE, | : | CHAPTER 13 |
| | : | |
| Debtor. | : | CONTESTED MATTER |
| | : | |

### DEBTOR'S BRIEF IN SUPPORT OF CONFIRMATION
### OF PROPOSED CHAPTER 13 PLAN

COMES NOW Debtor, through counsel, and files this "Debtor's Brief in Support of Confirmation of Proposed Chapter 13 Plan," showing to this Honorable Court the following:

### I. STATEMENT OF JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 1334, 28 U.S.C. Section 151 *et seq.*, and the Order of Referral entered by the United States District Court Northern District of Georgia on 12 July 1984. Venue is appropriate pursuant to 28 U.S.C. Section 1409. This matter is a core proceeding as defined in 28 U.S.C. Section 157(b)(2)(L). There is no issue regarding joinder or mis-joinder of parties.

### II. STATEMENT OF THE CASE

This chapter 13 case was initiated by Debtor's voluntary petition on 17 April 2009. The 341 meeting of creditors was held and concluded on 28 May 2009. The hearing on the confirmation of Debtor's proposed plan was originally set for 22 July 2009.

On 4 June 2009, the Standing Chapter 13 Trustee filed her initial objections to confirmation of Debtor's proposed plan. Included among those objections was the following: "4. The Form 22C filed in this case fails to disclose all of the Debtor's income in the six months preceding the filing of this case; specifically, the unemployment income is not disclosed."

The hearing on the confirmation of Debtor's proposed plan ultimately was rescheduled to 10 February 2010, at 1:30 p.m. In the meantime, Debtor resolved all of the Chapter 13 Trustee's objections except for objection 4, above. At the reset hearing on February 10th, after arguments by counsel, the Court took this matter under advisement and invited the parties to submit briefs.

### III. STATEMENT OF THE FACTS

1. Debtor's voluntary petition in this case was filed on 17 April 2009.
2. This case is subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA").
3. Debtor is a fifty-eight-years-old, single woman.
4. For purposes of the Means Test, Debtor's household size is one.
5. For purposes of the Means Test, Debtor's state of residence is Georgia.
6. On the date of her petition, Debtor had been unemployed for approximately nine months.
7. During the six calendar months prior to the filing of her case, Debtor's income consisted of unemployment benefits in the amount of $1,400 per month, and family contributions of approximately $2,250 per month.

8. Line 8. of Debtor's Form 22C reflects that Debtor claims $1,400 per month of unemployment compensation as a benefit under the Social Security Act and therefore includes $00 of that amount as income for purposes of determining her Lines 15 Annualized Current Monthly Income.

9. Line 7 of Debtor's Form 22C discloses the $2,250 per month family contribution as income for the purposes of determining Debtor's Annualized Current Monthly Income.

10. Based upon Line 7 and Line 8 f her Form 22C, Debtor's annualized Current Monthly Income is $27,000.

11. On the date that Debtor's petition was filed, the median family income for a debtor residing in Georgia with a household size of one was $40,760 (Line 16 of Form 22C).

12. As determined by Debtor's Form 22C, Debtor's Current Monthly Income is below the median family income that is applicable in her case to her household size and state of residence.

13. The Applicable Commitment Period for a debtor whose Current Monthly Income is below the median family income is 3 years.  (Line 17 of Form 22C, 11 U.S.C. Section 1325(b)(4))

14. The Applicable Commitment Period for a debtor whose current monthly income is "not les than" the median family income is "not less than" 5 years.  (Line 17 of Form 22C, 11 U.S.C. Section 1325(b)(4))

15. Debtor asserts that the Applicable Commitment Period in her case is 3 years.

3

16. If Debtor is required to include her unemployment benefits as income at Line 8 of Form 22C, then her annualized Current Monthly Income is $43,800 at Line 15 of her Form 22C.

17. If Debtor is required to include her unemployment benefits as income at Line 8 of Form 22C, then her annualized Current Monthly Income exceeds her applicable median family income by $3,040, and her Applicable Commitment Period is not less then 5 years.

18. Debtor's proposed chapter 13 plan provides for monthly payments of $816 to the Chapter 13 Trustee.

19. Debtor's proposed chapter 13 plan provides for a pool of $00.00 and/or a 00% dividend to be paid to the class of Debtor's general, unsecured creditors

20. If Debtor were to complete Form 22C by including her unemployment benefits as income for purposes of the Means Test, Debtor's Line 59 Monthly Disposable Income would indicate she has approximately $295 per month in disposable income which presumably should be available to pay Debtor's allowed general, unsecured claims.

## IV. STATEMENT OF THE ISSUE

1. Is Debtor required to include her unemployment benefits received during the six calendar months prior to the filing of her case when determining her Current Monthly Income in Form 22C?

## V. ARGUMENT AND CITATION OF AUTHORITY

Of the four reported cases that have decided this issue, two find that unemployment compensation is a benefit received under the Social Security Act while the others say it is not.

The first case to address the issue was Judge Waldron's decision in *In re Sorrell*, 359 B.R. 167 (Bankr. S.D.Ohio 2007), a chapter 7 case.  The court applied a "Plain Meaning" analysis to find that unemployment compensation is a benefit under the Social Security Act and therefore should not be included as income for purposes of determining Current Monthly Income.  Its rationale was based on the following:  (a) in excluding benefits under the Social Security Act, just as it did with charitable contributions and 401(k) loan repayments, Congress merely "exercise[ed] its permissible policy options" to prevent certain funds from being available for payment to creditors; (b) although the states are not required under the Social Security Act to pass unemployment laws, to the extent a state law is not in compliance with the Social Security Act, it is invalid under the Supremacy Clause of the United States Constitution; (c) state unemployment compensation programs are partially funded through federal grants which are conditioned upon the states' compliance with the federal law;  (d) the Social Security Act provides for research of the nationwide  unemployment compensation system (including the states' individual programs), training of state personnel, and an advisory counsel; (e) the Bankruptcy Code does not refer to "payments" under the Social Security Act – whether direct or indirect – but only of the broader term "benefits;" and, (f) elsewhere in the Bankruptcy Code, Congress referred to specific provisions of the Social Security Act but chose to use the broad term "Social Security Act" in connection with the Means Test.

5

The next case to decide the issue was *In re Munger*, 370 B.R. 21 (Bankr. D.Mass 2007), a chapter 13 case. The *Munger* court adopted the *Sorrell* analysis. It further reasoned that, since the Unemployment Trust Fund is distributed to the states by the federal government, and since the Supremacy Clause governs the states' unemployment laws, unemployment compensation payments are benefits under the Social Security Act.

It was not very long before the other side weighed in. In determining that Congress did not intend to exclude unemployment payments from the definition of Current Monthly Income, these courts first found that the statute, itself, is ambiguous. This then opened the door for them to look behind the statutory text to develop their interpretations of Congressional intent. The bankruptcy court in *In re Baden*, 396 B.R. 617 (M.D.Pa 2008)(a chapter 13 case) found that the language used by Congress was "inconsistent" – "A 'benefit received under the Social Security Act' may refer only to direct payments made by the federal government or it may include indirect payments made by state run programs." It also found that the legislative history of BAPCPA was of little help. So, the court then looked to the Internal Revenue Service's definition of "taxable income," which includes unemployment compensation, and adopted that as its definition of "income from all sources" for purposes of the Bankruptcy Code's Means Test. Finally, the court reasoned that, since unemployment compensation was included in the pre-BAPCPA definition of disposable income, excluding it from Current Monthly Income would violate the "general rule of statutory construction that deviations from established applications of judicial interpretation should be done with specificity."

Perhaps the most compelling argument for including unemployment compensation in Current Monthly Income is found in *In re Kucharz*, 418 B.R. 635

6

(Bankr. C.D.Ill 2009), another chapter 13 case. That court found that "[t]he provision is ambiguous on its face, as it is amenable to conflicting interpretations." It also concluded that the legislative history was of little help. It then looked to the history and nature of the Social Security Act, itself, analyzing it (erroneously) as follows: (a) the Social Security Act was deigned to provide an incentive for the states to enact unemployment compensation laws; (b) the state unemployment programs are totally created and run under state law and state regulations; (c) as a financial incentive for the states, the Social Security Act provides for federal grants to pay only the administrative costs of the various state programs; (d) all money paid as unemployment benefits to claimants originate through state taxes or stand alone federal acts, and not under the Social Security Act or the Federal Unemployment Tax Act or amendments thereto;[1] (e) the states are not required to participate in the unemployment program and can withdraw at any time; and, (f) the only penalty for non-compliance with the Social Security Act is the loss of federal funding. Based on the foregoing, the court reasoned that unemployment compensation is not a benefit under the Social Security Act, but instead arises under state law. If further reasoned that, since unemployment compensation is a temporary, partial substitute for lost wages, including it in a debtor's Current Monthly Income is consistent with the Means Test's policy and purpose. Finally, the court opined that BAPCPA is a remedial statute and exceptions to remedial legislation should be construed narrowly.

---

[1] "Neither the SSA nor FUTA requires the states to enact an unemployment insurance program. As determined by the Supreme Court, inducement is not coercion, and the unemployment insurance programs that were adopted in all 50 states are truly state, not federal, programs. Unemployment benefits are paid as required by state law, not by the SSA. To the extent that extended benefits may, from time to time, be required by federal law, and paid, in part, with federal funds, they are required by the EUCA and by stand-alone bills that are passed in times of high unemployment, not by the SSA or any amendments to the SSA. Thus, a purely textual analysis favors the conclusion that unemployment benefits are not received under the SSA." *Kucharz*, 418 B.R. at 641

Based upon that rule of statutory construction, it reasoned that unemployment compensation should not be excluded from debtors' Current Monthly Income calculations.

The flaws in the *Baden* and *Kucharz* analysis are numerous.  First, the statute is not ambiguous – unemployment compensation payments are benefits under the Social Security Act   While it is true that most of the benefits paid to claimants are raised through state taxes (and some stand alone federal legislation other than the Social Security Act and the Federal Unemployment Tax Act), it is not true that they originate exclusively therefrom.  Within the Unemployment Trust Fund is the Employment Security Administration Account. 42 U.S.C. Section 1101.  It is from this account that the states' administrative expenses are paid.  It is also from this account that the costs of research, training state personnel, and the operation of public employment offices are paid.  The Employment Security Administration Account is funded by federal grants.  At the end of each fiscal year, the Secretary of the Treasury is required to determine the excess in the Employment Security Administration Account and is authorized to make disbursements from that excess to the states' accounts within the Unemployment Trust Fund for payment of benefits.  Further dispelling the assertion in *Kucharz* that no claimants' benefits are paid under the Social Security Act, itself, is the fact that Section 2003(a) of the American Recovery and Reinvestment Act of 2009 amended Section 903 of the Social Security Act to provide for a pro rata payment of $7,000,000,000 (seven billion dollars) to eligible states for payment of unemployment benefits and expenses.

Pretermitting its apples and oranges comparison, *Baden's* "taxable income" analysis meets the same fate.  Section 1007 of the American Recovery and Reinvestment

8

Act of 2009 amended the Inter Revenue Code to exclude up to $2,400 of unemployment compensation received in any taxable year beginning in 2009 from an individual's gross income.

It is true that the states are not required by statute to participate in the unemployment program. It is also true that the only statutory remedy for a state's failure to comply with the Social Security Act's requirements is the loss of federal funding. 42 U.S.C. Section 1103. But it is also true that the public policies underlying the unemployment compensation program are so strong, that cutting off federal funding is deemed to be too extreme of a remedy. It hurts the claimants who are in the most need. Consequently, federal courts have invoked the Supremacy Clause to invalidate state unemployment laws that are not in compliance with federal law. "[T]he federal courts have all the powers they need, including the power to issue mandatory injunctions as detailed and specific as the situation requires, backed up by all the force of the United States, to make their decisions effective." *Jenkins v. Bowling*, 691 F.2d 1225, 1234 (7th Cir. 1982)(Posner, J)(affirming district court's judgment invalidating provisions of the State of Illinois's unemployment law). So, although the state unemployment programs are regulated under state law, ultimately it is federal law which governs how they are operated.

*Kucharz* also asserts that the Federal Unemployment Tax Act does not provide for the funding of state unemployment benefits. To the contrary, employers who contribute to a qualifying state unemployment compensation program receive up to a 90% credit against their obligations under the Federal Unemployment Tax Act. 26 U.S.C. Sections 3301-3311. By providing this credit, the federal government is subsidizing the state

9

unemployment compensation benefits. This credit works both as a carrot and a stick. It subsidizes the state's benefits while posing the threat that an employer may be subject to two taxes – 100% of the federal obligation plus the state's requirements – if the state falls out of compliance with the federal law. Employers faced with this double tax would be more likely to relocate to a state that is in compliance, to the non-complying state's detriment.

## VI. CONCLUSION

The Social Security Act provides substantial federal funds to be disbursed as benefits to state claimants. The state unemployment compensation laws are subject to federal regulation and oversight, and enforcement by the federal courts. It therefore is clear that unemployment compensation is a benefit arising under the Social Security Act and the statute is not ambiguous. Accordingly, Judge Waldron's "Plain Meaning" approach in *Sorrell* is correct – the courts should not look behind the plain meaning of the language of the statute. Based upon the foregoing, unemployment benefits received by Debtor in the six calendar months prior to the filing of Debtor's bankruptcy petition should be excluded from her Current Monthly Income.

    Respectfully submitted,

    s/*Richard H. Thomson*
    Richard H. Thomson
    GA Bar #710264
    Attorney for Debtor

10

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 09-70088-pwb |
| | : | |
| DARLENE ELIZABETH ROSE, | : | CHAPTER 13 |
| | : | |
| Debtor. | : | CONTESTED MATTER |
| | : | |

### CERTIFICATE OF SERVICE

This certifies that I served a true and correct copy of the within and foregoing

""Debtor's Brief in Support of Confirmation of Proposed Chapter 13 Plan," by placing

the same in the United States mail with adequate postage affixed to ensure delivery and

addressed as follows:

Bradny Kirkland, Esq.
Office of the Chapter 13 Trustee
Suite 2700 Equitable Bldg.
100 Peachtree Street, NW
Atlanta, GA 30303

Darlene Elizabeth Rose
5353 Lakerock Drive
Atlanta, GA 30331

This 12th day of March, 2010.

                                            s/*Richard H. Thomson*
                                            Richard H. Thomson
                                            GA Bar #710264
                                            Attorney for Debtor

Clark & Washington, P.C.
3300 Northeast Expressway
Building 3
Atlanta  GA  30341
Phone: 404-522-2222
Fax: 770-220-0685
E-mail: rthomson@cw13.com

11