UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | } | CHAPTER 13 |
| | } | |
| DARLENE ELIZABETH ROSE, | } | CASE NO. A09-70088-PWB |
| | } | |
| DEBTOR. | } | JUDGE PAUL W. BONAPFEL |

### BRIEF IN SUPPORT OF TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 13 PLAN

COMES NOW, MARY IDA TOWNSON, Chapter 13 Trustee in the above-styled matter and files this, her Brief in Support of Trustee's Objection to Confirmation of Debtor's Proposed Chapter 13 Plan, respectfully showing the Court the following:

### JURISDICTION

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334(b), as well as Rule 1070-1 of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. §§ 1408-1409.

### PROCEDURAL POSTURE

On April 17, 2009, Darlene Elizabeth Rose (hereinafter referred to as "Debtor"), through her attorney of record Clark & Washington, P.C., filed for relief under Chapter 13 of Title 11 of the United States Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter referred to as "BAPCPA"). The Debtor's proposed Chapter 13 plan, as amended, provides for a monthly payment of $816.00, an applicable commitment

period of thirty-six (36) months, and a dividend of zero percent (0%) to the Debtor's unsecured creditors (docket entry 23).

The non-governmental bar date, as provided in Fed. R. Bankr. P. 3002(c), was August 26, 2009, and the governmental bar date was October 14, 2009. Although Bank of America has not filed a claim and no claim has been filed on its behalf by Debtor's counsel, the Debtor's plan proposes to fund an anticipated claim from Bank of America in the amount of $26,108.00 in full with six percent (6%) interest, secured by the Debtor's 2007 Saturn Sky. The plan also proposes to fund Clark & Washington, P.C.'s attorney's fees of $3,000.00, as well as a first mortgage arrearage claim filed by Ocwen Loan Servicing, LLC in the amount of $10,557.42, secured by the Debtor's residence.

A total of $42,951.98 in general unsecured claims have been filed; however, the Debtor's proposed plan provides for the $32,845.47 claim filed by the Debtor's student loan company (ECMC on behalf of Student Loan Xpress, Inc.) to be paid direct by the Debtor outside the plan when the deferment ends, leaving $10,106.52 in general unsecured claims to be paid under the plan at zero (0) cents on the dollar.

Pursuant to 11 U.S.C. § 341(a), a meeting of creditors was held and concluded on May 28, 2009. Counsel for the Chapter 13 Trustee filed objections to the confirmation of the Debtor's proposed plan on June 4, 2009 (docket entry 10). The undersigned presented oral argument in opposition to the confirmation of the Debtor's proposed Chapter 13 plan at the re-scheduled confirmation hearing held February 10, 2010.

## ISSUE

Whether unemployment benefits are included in a Chapter 13 debtor's current monthly income as defined by 11 U.S.C. § 101(10A).

ARGUMENT

If a Chapter 13 Trustee or a holder of an allowed unsecured claim objects to the confirmation of a debtor's proposed Chapter 13 plan, a United States Bankruptcy Court may not approve the plan unless "…the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). In order to make this determination, a debtor's current monthly income must first be determined. In the instant case, the only barrier to this determination is whether unemployment benefits are included in a Chapter 13 debtor's current monthly income.

BAPCPA added the term "current monthly income" to Title 11 of the United States Code with Section 101(10A). According to Section 101(10A)(B), current monthly income

> includes any amount paid by an entity other than the debtor…on a regular basis for the household expenses of the debtor or the debtor's dependents…but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism…or domestic terrorism…on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A)(B).

Seemingly aware of the above-referenced issue, the drafters of Official Form 22C left the decision of whether to include a debtor's unemployment benefits in current monthly income up to the debtor. Line eight (8) of Official Form 22C (docket entry 1 in the instant case) is where unemployment benefits are to be listed for inclusion in the debtor's current monthly income calculation. However, there is commentary from the drafters on that particular line that if the

3

debtor contends the unemployment compensation received was a benefit under the Social Security Act, to list the figure in an informational box on that line instead of including it in the current monthly income calculation.

The Debtor's Form 22C lists her unemployment compensation in the amount of $1,400.00 in the informational box on line eight (8) and does not include it in the current monthly income calculation. As referenced *supra*, counsel for the Trustee objected to the confirmation of the Debtor's proposed plan and the undersigned argued against confirmation at the hearing thereon, alleging the unemployment compensation received by the Debtor was not a benefit received under the Social Security Act.

There have been five (5) reported decisions on this issue, only four (4) of which have articulated a holding on the above-referenced issue. The first two (2) reported decisions were in Chapter 7 cases: In re Sorrell, 359 B.R. 167 (Bankr. S.D. Ohio January 26, 2007) and In re Munger, 370 B.R. 21 (Bankr. D. Mass. June 21, 2007). Both Courts ruled that unemployment benefits were benefits received under the Social Security Act and, as a result, were excluded from a debtor's current monthly income.

The next three (3) reported decisions were in Chapter 13 cases: In re Baden, 396 B.R. 617 (Bankr. M.D. Pa. October 30, 2008), In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. October 28, 2009), and In re Avellaneda, 2009 Bankr. LEXIS 4108 (Bankr. E.D. Va. December 15, 2009). The Courts in the first two cases ruled that unemployment benefits were not benefits received under the Social Security Act and, as a result, were included in a debtor's current monthly income. The Court in In re Avellaneda reserved ruling on the issue because, had the Court ruled in the Debtors' favor, the Debtors would have still been under the median income for their household size in the State of Virginia.

4

If a debtor's current monthly income exceeds his/her state's median income, the applicable commitment period of the plan must be sixty (60) months and the debtor must complete the "means test" as required by 11 U.S.C. § 1325(b). Since Mr. and Mrs. Avellaneda would have been below the median income even if their unemployment benefits had been included in their current monthly income, the issue was immaterial and the Court declined ruling. In re Avellaneda, 2009 Bankr. LEXIS 4108 (Bankr. E.D. Va. December 15, 2009).

Unlike In re Avellaneda, the issue is material in the instant case because, if this Honorable Court rules that the Debtor's unemployment benefits are not benefits received under the Social Security Act and therefore included in the Debtor's current monthly income, the Debtor would be over the median income for the Debtor's household size of one (1) in the State of Georgia and, according to the undersigned's calculation of the means test, the Debtor would be required to commit $335.00 per month to her unsecured creditors pursuant to the requirements of 11 U.S.C. § 1325(b). This would result in a one hundred percent (100%) dividend to those creditors with allowed unsecured claims that have been filed and provided for treatment in the Debtor's proposed plan, something the Debtor could accomplish within a total of fifty-seven (57) months if the Debtor complies with the terms of her proposed Chapter 13 plan requiring monthly payments to the Chapter 13 Trustee of $816.00 (this is assuming a claim will be filed by or on behalf of the debtor's car creditor, Bank of America, in an amount equal to that anticipated on the Debtor's Schedule D).

The first time the above-referenced issue was addressed in a published opinion was on January 26, 2007 by Judge Waldron in In re Sorrell at 359 B.R. 167 (Bankr. S.D. Ohio). In this Chapter 7 case, Judge Waldron held that, "…in consideration of the text of various relevant portions of the Social Security Act, United States Supreme Court language, and a comparison

5

with other statutory text of the 2005 Act…the Court holds that unemployment compensation is one of the 'benefits under the Social Security Act.'" Id. at 183.

Judge Waldron referred to current monthly income as a factor in a "…mathematical formula…used to calculate whether a debtor's financial circumstances creates a presumption against granting the relief available in a chapter 7 case." Id. at 179.  This purpose is very different from that in a case filed under Chapter 13 where the means test is used to determine the amount a debtor shall repay his/her unsecured creditors.

Apparently in an effort to address this divergence of purpose, Judge Waldron specifically limited his ruling in In re Sorrell to the context of a Chapter 7 case.  In only the third sentence of the Court's Order, the Court "…notes that this case is limited to the consideration of § 707(b) in the context of a chapter 7 case[]" further noting in a footnote that "[t]he Court recognizes that certain provisions of § 707(b)(2) are specifically referred to in § 1325(b)(3)[]", specifically differentiating the issue in a Chapter 7 case from that in a Chapter 13, as in the instant case. Id. at 170.

The second time the issue was addressed in a published opinion was on June 21, 2007 by Judge Rosenthal in In re Munger at 370 B.R. 21 (Bankr. D. Mass.) who relied heavily on the ruling and reasoning of Judge Waldron in In re Sorrell (citation *supra*).  Judge Rosenthal ruled that the filing of a Chapter 7 by Mr. and Mrs. Munger was "…not an abuse warranting dismissal[]" because "…unemployment compensation does constitute a 'benefit received under the Social Security Act' for purposes of calculating CMI…" In re Munger 370 B.R. 21 (Bankr. D. Mass. June 21, 2007).

As were the facts in In re Sorrell, Mr. and Mrs. Munger had filed for relief under Chapter 7 and their current monthly income was being used to determine whether granting relief under

6

Chapter 7 would be an abuse of the provisions thereof pursuant to 11 U.S.C. § 707(b), not to determine the amount they would be repaying their unsecured creditors pursuant to 11 U.S.C. § 1325(b) as in the instant case.

The first time the issue was addressed in a case filed under Chapter 13 was in an opinion by Judge Thomas published on October 30, 2008 in In re Baden at 396 B.R. 617 (Bankr. M.D. Pa.). After "…considering the language of the Bankruptcy Code and Congress' intent in enacting the BAPCPA," Judge Thomas ruled "…that unemployment compensation is not a 'benefit received under the Social Security Act' and, therefore, should be included in the calculation of CMI." Id. at 623.

Judge Thomas disagreed with the Sorrell and Munger Courts in their theories on the disconnect between Congress' references to specific sections of the Social Security Act in 11 U.S.C. §§ 362(b)(2), 522(d)(10)(A), 704(c)(1)(A)(i), and 1302(d)(1)(A)(i) and their broad reference to simply "the Social Security Act" in 11 U.S.C. § 101(10A)(B). For example, the Munger Court stated that Congress' distinction between "a social security benefit" and "unemployment compensation" in 11 U.S.C. § 522(d)(10)(A) supports its view that the words "benefits received under the Social Security Act" used in 11 U.S.C. § 101(10A)(B) were intentionally broad so as to incorporate unemployment benefits. In re Munger, 370 B.R. 21, 26 (Bankr. D. Mass. June 21, 2007).

The Trustee agrees with the Baden Court which ruled that the above-referenced distinction is actually quite the contrary. This distinction is "…a manifestation of Congress' intent that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily

7

administered by the federal government." In re Baden at 396 B.R. 617, 621 (Bankr. M.D. Pa. October 30, 2008).

State unemployment programs provide funds to involuntarily unemployed workers to partially replace lost wages so that they may pay for their expenses until they are able to secure new employment. In the instant case, it appears the Debtor's unemployment benefits were just that, a temporary replacement of the Debtor's lost wages while she sought new employment which, according to the Debtor's Schedule I (docket entry 16), she found with the Fulton County Department of Family and Children Services. It would not be appropriate to deduct expenses from a debtor's current monthly income when not all available funds are included in the current monthly income calculation itself. Id. at 623.

In the Baden Court's opinion, Judge Thomas pointed out that while "current monthly income" is a term of art added to the Bankruptcy Code by BAPCPA, the pre-BAPCPA definition of disposable income included "…income from all sources according to judicial decisions rendered in that time period…" and that "…deviations from established application of judicial interpretation should be done with specificity." Id. at 623 (citing In re Freeman, 86 F.3d 478 (Tenn. 1996), In re Hagel, 184 B.R. 793 (9th Cir. BAP 1995), Watters v. McRoberts, 167 B.R. 146 (S.D. Ill. 1994), In re Minor, 177 B.R. 576 (Bankr. E.D. Tenn. 1995), In re Cavanaugh, 175 B.R. 369 (Bankr. D. Idaho 1994), and Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection, 474 U.S. 494, 501 (U.S.N.J. 1986)). Judge Thomas found that if Congress had intended to exclude unemployment benefits from a debtor's current monthly income, it would have done so with greater specificity. Id.

The most recent opinion published in which a decision on this issue was rendered was decided on October 28, 2009 by Judge Perkins in In re Kucharz at 418 B.R. 635 (Bankr. C.D. Ill.

8

October 28, 2009). Judge Perkins also ruled that unemployment benefits are included in a Chapter 13 debtor's current monthly income because, *inter alia*, unemployment benefits are paid as required by state law, not by the Social Security Act, and the benefits paid to a state's beneficiaries are paid with state funds by state employees. Id.

Judge Perkins began his analysis of this issue with the Social Security Act itself; its history, administration, and funding. In 1935, Congress rejected the proposal for a national unemployment benefits program and, instead, enacted the Social Security Act, which incentivized the states to adopt their own laws requiring payments of unemployment benefits to their involuntarily unemployed citizens. Id. at 638 (citing New York Telephone Co. v. New York State Dept. of Labor, 440 U.S. 519, 541 (1979) and Baker v. General Motors Corp., 478 U.S. 621, 633 (1986)). "Rather than creating a uniform federal scheme for unemployment compensation, the states were encouraged to run their own programs, with federal involvement existing primarily through tax incentives." Id. at 639 (citing Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 483 (1977)).

These incentives are provided by the Federal Unemployment Tax Act (FUTA), which imposes an excise tax on wages paid by employers but allows for a tax credit of up to ninety percent (90%) for contributions the employer makes to a state trust fund established under a federally approved state unemployment compensation law. Id. at 638 (citing 26 U.S.C. §§ 3301-3311). Although FUTA originally appeared as Title IX of the Social Security Act, it was moved to the Internal Revenue Code in 1939 and has not been a part of the Social Security Act since. Id.

In order to protect the employer contributions to the states' trust funds, states are required to deposit those funds with the United States Treasury in an "Unemployment Trust Fund." Id.

9

(citing Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 575 (1937)).  Although the funds are aggregated for investment purposes, the Treasury maintains separate accounts for each state's deposits and the earnings thereon.  In re Kucharz, 418 B.R. 635, 638 (Bankr. C.D. Ill. October 28, 2009) (citing 42 U.S.C. § 1104(e)).  The funds are then distributed back to the respective states upon their request on an as-needed basis.  Id. (citing 42 U.S.C. § 1104(f)).

Each state is required to use the trust funds solely for the payment of unemployment compensation benefits, exclusive of the costs of administering the program.  Id. (citing 42 U.S.C. § 503(a)(5) and 26 U.S.C. § 3304(a)(4)).  This means that the unemployment benefits received by the Debtor in the instant case and all unemployment beneficiaries, come solely from state funds pursuant to state law.  Most, if not all, of a state's costs to operate and administer its program are paid for through federal grants because, as Justice Cardozo pointed out in Charles C. Steward Mach. Co. v. Davis, states were reluctant to enact unemployment benefits programs for fear of putting themselves at an economic disadvantage compared with their neighbors.  Id. (citing 42 U.S.C. §§ 501-504 and 1101(c)(1)(A) and Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 587-88 (1937)).  Providing for federal financing of only the administrative expenses of a state-created and managed unemployment benefits program was an inducement to the states to adopt programs that would achieve minimum requirements.  Id. at 639 (citing Jenkins v. Bowling, 691 F.2d 1225, 1229 (7th Cir. 1982)).

However, as the Kucharz Court stated,

…the inquiry is more specific than whether there is merely an historical link between the SSA and unemployment compensation.  Unemployment payments are excluded only if they are properly characterized as benefits received under the Social Security Act.  It is not sufficient that the benefits are merely "related to" or "envisioned by" or "induced by"

10

the SSA. More is required. They must have been received *under* the SSA. Neither the SSA nor FUTA requires the states to enact an unemployment insurance program.

In re Kucharz, 418 B.R. 635, 641 (Bankr. C.D. Ill. October 28, 2009) (emphasis in original). Based on the Court's analysis, unemployment compensation is not a benefit received under the Social Security Act and is, therefore, included in the calculation of a Chapter 13 debtor's current monthly income.

Although each state is required to collect unemployment taxes sufficient to pay the benefits mandated by each state's laws, the Federal-State Extended Unemployment Compensation Act of 1970 (EUCA) and Section 3304(a)(11) of the Internal Revenue Code (a FUTA provision) require states to provide extended benefits during times of high unemployment. From time to time, Congress may legislate additional weeks of unemployment benefits over and above the usual twenty-six (26) weeks provided by the majority of the states. In re Kucharz, 418 B.R. 635, 638 (Bankr. C.D. Ill. October 28, 2009). However, Section 204 of EUCA states that the federal government is to pay one-half of the *extended* benefits paid by a state. Therefore, even in times of high unemployment, the Kucharz Court ruled that unemployment compensation is not a benefit "…received under the Social Security Act…" because neither EUCA nor FUTA is part of the Social Security Act. Id. To the extent that extended benefits may be required by federal law and paid, in part, with federal funds, they are required by EUCA and by stand-alone bills that are passed in times of high unemployment, not by the Social Security Act or any amendments thereto. Id. at 641.

Shortly after the Social Security Act was enacted in 1935, its constitutionality was challenged in Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548 (1937). The excise tax referenced above was challenged as coercion of the states in violation of the Tenth Amendment

11

to the United States Constitution and the provisions of the Social Security Act were alleged to be requiring an unconstitutional surrender by the states of powers essential to their sovereignty. In re Kucharz, 418 B.R. 635, 639 (Bankr. C.D. Ill. October 28, 2009).

Justice Cardozo rejected those challenges, "…recognizing that the taxes are collected pursuant to laws enacted by the states, and that benefits are paid under programs administered by state officials." Id. (citing Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548 (1937)). Justice Cardozo went on to explain that the purpose of the Social Security Act was to encourage states to adopt and run their own unemployment benefit programs. Id. Because the states were free to either adopt or not adopt an unemployment benefits program and, if chose to adopt, "…retained administrative control over their own programs, they were not deemed to have surrendered sovereign powers to the federal government." Id.

In a decision issued the same day, the United States Supreme Court upheld the constitutionality of the Alabama Unemployment Compensation Act ruling that the fund is administered in accordance with state law by the state commission. Id. at 640 (citing Carmichael v. Southern Coal & Coke Co., 301 U.S. 495 (1937)). Justice Stone reasoned that the statute may be repealed at the will of the legislature and, in that situation, the state would be free to withdraw its unexpended share of the Unemployment Trust Fund and use it for any public purpose. Id.

In this State, Sections 34-8-83 through 34-8-85 of the Official Code of Georgia establish a state unemployment compensation fund and address its funding as well as payments to and disbursements from the federal Unemployment Trust Fund. O.C.G.A. §§ 34-8-83 through 34-8-85 (2009). Section 34-8-86 states that Sections 34-8-83 through 34-8-85, as they relate to the Unemployment Trust Fund, shall be operative only as long as the Unemployment Trust Fund continues to exist and the Secretary of the Treasury of the United States continues to maintain a

12

separate account of all funds deposited therein by the State of Georgia together with Georgia's proportionate share of the earnings of the Unemployment Trust Fund, from which no other state is permitted to make withdrawals.  O.C.G.A. § 34-8-86 (2009).

If the Unemployment Trust Fund ceases to exist or such separate accounting is no longer maintained, all moneys, properties, or securities therein belonging to the State of Georgia's unemployment compensation fund shall be transferred to the Treasurer of Georgia's unemployment compensation fund, who shall hold, invest, transfer, sell, deposit, and release such funds, properties, or securities in a manner approved by the Commissioner in accordance with Chapter Eight (8) of Title Thirty-Four (34) of the Official Code of Georgia.  O.C.G.A. § 34-8-86 (2009).  These "…funds shall be invested in the bonds or other interest-bearing obligations of the United States of America and of the State of Georgia…" and "…such investment shall at all times be so made that all the assets of the fund shall always be readily convertible into cash when needed for the payment of benefits."  O.C.G.A. § 34-8-86 (2009).

Should the federal Unemployment Trust Fund cease to exist, its separate accounting practices be discontinued, or even if the Social Security Act is repealed, unemployment beneficiaries will continue to receive unemployment compensation with state funds pursuant to state laws just as they always have, independent of the Social Security Act.

The Kucharz Court ended its analysis of the issue with the definition of "current monthly income" itself, which uses a six-month look-back period as an indicator of future income, including earnings from employment, serving a predictive function.  In re Kucharz, 418 B.R. 635, 642 (Bankr. C.D. Ill. October 28, 2009).  While retired debtors or debtors who no longer work have a fixed and predictable income, working debtors, such as the Debtor in the instant

13

case, are subject to a variety of unforeseeable events that affect their jobs and income such as plant closings, downsizing, layoffs, reduction in hours, job changes, etc.  Id.

> The theory behind CMI is premised upon the assumption that their recent earnings history is a valid predictor of how much debtors are likely to earn in the future.  Since unemployment benefits replace lost wages, including those benefits in the CMI calculation is consistent with the predictive purpose of the provision.  The fallacy of using $0 during periods of temporary unemployment as a predictor of future earnings once the debtor is reemployed seems obvious.

Id.  The Court also pointed out that the Bankruptcy Code's definition of current monthly income "…defines income as broadly as possible.  It encompasses the debtor's income from 'all sources…without regard to whether such income is taxable[]'" and "…includes 'any amount paid by any entity' that helps pay the debtor's household expenses."  Id. at 643.  As mentioned *supra*, state unemployment programs provide funds to involuntarily unemployed workers to partially replace lost wages so that they may pay for their expenses until they are able to secure new employment.  To exclude this compensation from a Chapter 13 debtor's current monthly income appears to run afoul of the predictive purpose of 11 U.S.C. § 101(10A) as indicated by the Kucharz Court.  Id.

Given this broad definition combined with the fact that the "…three exceptions to the general rule of all-inclusiveness…[(]payments to victims of certain crimes, of terrorism, and benefits received under the SSA[)]…the ambiguity of whether unemployment compensation is a benefit received under the SSA should be resolved in favor of including such benefits within CMI."  Id.

CONCLUSION

Based on the above, a Chapter 13 debtor's unemployment compensation is not a benefit "…received under the Social Security Act..."  It is a benefit received under state law administered by state employees with state funds.  Unemployment compensation is just that, compensation paid to a beneficiary, the requirements for which are determined by state law, to replace that beneficiary's former compensation until he/she can find gainful employment.  If a debtor were still employed at his/her former job, there would be no question as to whether the income therefrom would be included in the debtor's current monthly income.  The income a debtor receives during his/her temporary unemployment to replace the debtor's former wages should be no different, as those funds were deducted from the paychecks of the state's employees, contributed to the Trust by the employers, and distributed to the beneficiaries pursuant to state law by state employees, independent of the Social Security Act.

WHEREFORE, the Trustee respectfully requests this Honorable Court rule that unemployment benefits are included in a Chapter 13 debtor's current monthly income as defined by 11 U.S.C. § 101(10A) and deny the confirmation of the Debtor's proposed Chapter 13 plan.

Respectfully submitted this 12th day of March, 2010.

/s/
Brandi L. Kirkland
Attorney for the Chapter 13 Trustee
Georgia Bar No. 423627
100 Peachtree Street, Suite 2700
Atlanta, GA 30303
(404) 525-1110
brandik@atlch13tt.com

## **CERTIFICATE OF SERVICE**

This is to certify that I have served a copy of the foregoing Brief in Support of Trustee's Objection to Confirmation of Debtor's Proposed Chapter 13 Plan by first class, United States Mail, with adequate postage prepaid on the following individuals at the addresses listed below.

| | |
|---|---|
| Richard H. Thomson, Esq. | Darlene Elizabeth Rose |
| Clark & Washington, P.C. | 5353 Lakerock Drive |
| 3300 Northeast Expy., NE, Suite 3A | Atlanta, GA 30331 |
| Atlanta, GA 30341 | |

This 12th day of March, 2010.

_____/s/_____
Brandi L. Kirkland
Attorney for the Chapter 13 Trustee
Georgia Bar Number 423627
100 Peachtree Street, Suite 2700
Atlanta, GA 30303
(404) 525-1110
brandik@atlch13tt.com